Marie C.
**STEARNS–HOTZFIELD, Respondent,**

v.

**FARMERS INSURANCE EXCHANGE, Relator,**

**Commissioner of Economic Security, Respondent.**

No. C4–84–1399.

Court of Appeals of Minnesota.

Jan. 8, 1985.

Marie C. Stearns-Hotzfield, pro se.

Eric J. Magnuson, Minneapolis, for relator.

Paul N. Heckt, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered, and decided by WOZNIAK, P.J., and LANSING and LESLIE, JJ.

## OPINION

WOZNIAK, Judge.

Farmers Insurance Exchange (Farmers) appeals from a decision of the Commissioner of Economic Security determining it to be an employer and responsible for the payment of unemployment taxes and for compliance with the administrative reporting requirements. We reverse.

## FACTS

This employer liability action arises out of a claim for unemployment benefits by claimant-respondent Marie C. Stearns-Hotzfield. In September of 1981, claimant was hired by Colleen Roder to provide in-home nursing care to Roder, a Minnesota resident whose involvement in a Michigan automobile accident rendered her a quadriplegic. Roder was insured by Farmers, which does business in Minnesota. Under Michigan law, Farmers was obligated to pay for all home care services provided to Roder by the claimant. Mich.Comp.Laws Ann. § 500.3107(a).

The facts surrounding the claim are essentially undisputed. Roder hired claimant and her hours and day-to-day activities were determined by Roder. At the end of each week, claimant would have Roder sign her timesheet and claimant would then submit the timesheet to Farmers which sent the claimant her paycheck. There is no evidence in the record that Farmers did any act other than direct payment of claimant's wages. At oral argument, Farmers admitted liability for the payment of the unemployment tax if Roder submitted the claim under the policy coverage.

In mid-February 1983, claimant notified Roder that she intended to leave her job for personal reasons and she later filed a claim for unemployment compensation benefits.

On April 20, 1983, an Unemployment Compensation Tax Specialist issued a letter of determination informing Farmers that, pursuant to Minn.Stat. § 268.04, subd. 9 (1982) and department rules, Farmers was engaged in an employer-employee relationship with the claimant and was required to file quarterly tax reports. Farmers appealed. Following an evidentiary hearing, a Department Employer Liability Referee affirmed the determination of the UC Tax Specialist. On appeal by Farmers, a Commissioner's representative vacated the facts and decision of the referee and remanded the matter for the taking of further evidence.

Following a second evidentiary hearing, a Department Employer Liability Referee once again affirmed the determination of the Tax Specialist that Farmers was an employer for unemployment tax and benefit purposes. On appeal by Farmers, a Commissioner's representative modified the decision of the Employer Liability Referee, finding that Roder, and not Farmers, was the employer for unemployment tax and benefit purposes. On July 10, 1984, before the expiration of the 30-day appeal period, the chief of the Commissioner's representatives issued an order vacating the June 11, 1984, decision of the Commissioner's representative. The new basis for vacating the decision was that the decision was contrary to Minn.Stat. § 268.04, subd. 9 (1982) and 8 MCAR § 4.3104(C)(1) (renumbered as Minn. Rules § 3315.3400, subp. 10). In finding that Farmers was the employing unit for unemployment tax and benefit purposes, the Chief Commissioner's Representative noted that, in the case of "homeworkers," it is solely the provision of funds to hire the worker that is decisive in establishing an employer-employee relationship, and not the day-to-day direction and control of the services to be performed. The Chief Commissioner's Representative further found that the law was so amended and the rules so drafted because the party receiving the services is seldom financially able to support the tax necessary to provide the benefits arising from the employment.

## ISSUES

1. For unemployment tax and benefit purposes, was Farmers Insurance Exchange the employing unit of a health care homeworker within the meaning of Minn. Stat. § 268.04, subd. 9 (1982)?

2. May the representative of the Commissioner of Economic Security vacate a decision previously issued and substitute an amended decision reversing the original decision?

## ANALYSIS

### I.

■ Farmers was determined to be an "employing unit" pursuant to Minn.Stat. § 268.04, subd. 9, and held to be responsible for paying unemployment taxes and complying with reporting requirements.

An employer cannot be held liable for employment taxes and be required to comply with reporting requirements unless it can be shown that the employer had the right to control the terms and conditions of claimant's employment. Minn.Stat. § 268.-04, subd. 12 (Supp.1983). In making that determination, the department considers at least 14 separate criteria. *See* Minn.Rules § 3315.1000, et seq. If the employer does not exercise the necessary degree of control, the claimant is considered to be an independent contractor and not entitled to unemployment compensation benefits. Minn.Stat. § 268.04, subd. 12 (Supp.1983).

During the hearing process, this analysis was applied to all decisions (prior to the vacation by the Chief Commissioner's Representative) and, in the final determination, Roder was determined to be responsible for paying the unemployment taxes and for complying with the reporting requirements.

However, the order vacating this final determination alleged new statutory grounds. In 1982, the legislature created a special exception to the traditional "control" analysis used to determine whether an employment relationship existed by passing the so-called "homeworker" amendment. This amendment added the following sentence to the definition of an "employing unit" found in Minn.Stat. § 268.04, subd. 9 (1980):

> For the purposes of sections 268.03 to 268.24 any *agency* providing or authorizing the hiring of homeworkers, personal care attendants, or other individuals performing similar services in the private home of an individual is the employing unit of the homeworker, attendant or similar worker whether the *agency pays the employee directly or provides funds to the recipient of the services to pay for the services.*

Minn.Laws 1982, 1st Sp.Sess., ch. 1 § 1, codified as Minn.Stat. § 268.04, subd. 9 (1982) (emphasis added). The corresponding rule promulgated by the Department of Economic Security provides:

> Any *agency* providing or authorizing the hiring of homeworkers or personal care attendants in the private home of an individual is the employer of those individuals performing the services and the services are not considered domestic if the recipient would not receive the care *unless provided or funded for by the agency. It is immaterial whether the agency pays the homeworker or attendant directly or if the agency provides the funds to the recipient.*

8 MCAR § 4.3104(C)(1) (renumbered as 1983 Minn.Rules § 3315.3400, subp. 10) (emphasis added).

■ The question of whether Farmers is covered under the "homeworker" amendment to Minn.Stat. § 268.04, subd. 9, is a question of law upon which this court is free to exercise its independent judgment. *Smith v. Employers' Overload Company,* 314 N.W.2d 220 (Minn.1981). The court's function, guided by ordinary rules of construction, is to ascertain the legislative intent and to give effect to it. *Nordling v. Ford Motor Co.,* 231 Minn. 68, 77, 42 N.W.2d 576, 582 (1950).

In recognizing that handicapped persons are often unable to meet the financial burden of paying unemployment taxes or are unable or incapable of complying with the reporting requirements, this special exception was crafted from the traditional "control" analysis provided in Minn.Rules § 3315.1000, et seq. The amendment evinces a legislative intent to shift the financial and reporting burden from the handicapped person to the agency which provides the funds to pay the homeworker.

The legislature also provided that it does not matter whether the agency pays the employee directly or simply provides the funds to the recipient of the services to pay for those services.

In vacating the decision of the Commissioner's Representative, the Chief Commissioner's Representative found that this case was governed by Minn.Stat. § 268.04, subd. 9 (1982) and 8 MCAR 4.3104(C)(1), noting:

> In this instance, it is the providing of funds to hire the worker that is decisive in establishing the employer/employee relationship, for tax and benefit purposes, not the day-to-day direction and control of the work done. The law was so amended to provide for such workers, and the rule was so drafted because the party receiving the services is seldom financially able to support the tax necessary to provide the benefits arising from the employment.

Farmers argues correctly that the amendment was intended to shift the burden only to governmental agencies.

Legislative history indicates that the intent of the legislature was to apply the statute solely to state or local government agencies.

The "homeworker" amendment originated in hearings on S.F. 203, an unemployment compensation bill that never passed. On February 11, 1982, the bill was presented to the Unemployment Insurance Subcommittee at a meeting that was open for public testimony.

During testimony, a member of the Legal Services Advisory Project stated that some handicapped people cannot afford to pay the unemployment compensation tax for their homeworkers. An Assistant Commissioner for the Department of Economic Security responded by stating that funds are normally provided for domestic workers and medical assistants through "government sources" without any provisions as to who should be considered the worker's employer. She further testified, in the case of domestic workers, the department had been able to persuade most coun-

ties to accept liability for the tax, but that it had less success with respect to medical personnel because it was more difficult for a governmental agency to become involved in the hiring and firing of such persons. *See* Tape of Meeting of Unemployment Insurance Subcommittee, February 11, 1982. Testimony was offered that local governments or the state, which provides most of the funds for homeworkers, should be regarded as the employer. *See* Tape.

The first bill never passed and, at the February 16, 1982, meeting of the subcommittee, the amendment to Minn.Stat. § 268.04, subd. 9, was proposed for inclusion in S.F. 1108. In presenting the amendment, Senator Chmielewski referred to the "state or local agency" as the employing unit. The amendment was passed as part of S.F. 1108. Eventually S.F. 1108 was added to H.F. 1220, a workers' compensation bill. The homeworker amendment received no further discussion. Ultimately, during a special session, the bill was passed, adding the "homeworker" amendment to Minn.Stat. § 268.04, subd. 9.

Laws must be construed to give effect to the legislature's intent. Minn.Stat. § 645.-16 (1982). If the legislature had intended entities other than those associated with the government to be regarded as the employers of homeworkers, it would have used words other than, or in addition to, the term "agency." It did not do so.

The legislature has consistently used the word "agency" elsewhere in the Minnesota Statutes to mean a governmental entity. *See, e.g.,* Minn.Stat. § 14.02, subd. 2 (1982), which defines "agency" as "any state officer, board, commission, department or tribunal * * * having a statewide jurisdiction and authorized by law to make rules or to adjudicate contested cases." In fact, there is no definition of "agency" anywhere in the Minnesota Statutes that includes, either implicitly or explicitly, a private insurance company or any other entity that is not an arm of the state or local government.

The "homeworker" amendment was meant to apply to governmental bodies

such as those that provide financial assistance to the poor for medical and other needs pursuant to Minn.Stat. ch. 256B. In that statute and in the rules promulgated pursuant thereto, "agency" is consistently defined as a state or local governmental entity. *See, e.g.,* Minn.Stat. § 256B.02, subds. 5, 6; 1983 Minn.Rules §§ 9500.0520, subp. 10, .0670 subp. 6.

The Commissioner argues that tapes of the legislative hearings cannot be considered in this appeal. The rules contained in the Legislative Manual state that the recordings of the committee proceedings should not be admissible in any court on an issue of legislative intent. These rules are, however, merely a statement of intention and do not carry the force of law. Section 645 of the Minnesota Statutes contains the statutes governing statutory interpretation and contain no such prohibition. Further, both the Minnesota Supreme Court and this court have used tapes of legislative proceedings as a means of ascertaining legislative intent.

■ As the Minnesota Supreme Court noted in *Reserve Mining Co. v. State,* 310 N.W.2d 487, 491 (Minn.1981), an inquiry into the legislature's motives is not usually proper, but an examination of the materials that constitute legislative history is permissible if the purpose is simply to determine what the legislature intended by the language it used. *See also Starkweather v. Blair,* 245 Minn. 371, 380, 71 N.W.2d 869, 876 (1955). Here the intention is clear and unambiguous.

The obvious purpose of the legislation is to relieve handicapped people of the burden of paying unemployment compensation taxes. Testimony further indicates that the amendment was meant to ensure that the governmental agencies who normally paid the bills for homeworker services would be regarded as the employers. In passing this amendment, the legislature resolved the immediate and pressing problem of agency payments to the needy and poor, but failed to address the issue raised herein.

If insurance companies are to be required to fulfill the obligations of employers regarding unemployment taxes and reporting under facts as here presented, that requirement should properly be imposed by the legislature and not by this court.

## II.

■ This case arises in the unusual posture of having been originally decided for Farmers by a representative of the Commissioner. That decision was then vacated sua sponte by the Chief Commissioner's Representative.

The Minnesota Supreme Court has consistently recognized that administrative agencies have the inherent authority to correct adjudications which appear to be erroneous. *Anchor Casualty Company v. Bongards Cooperative Creamery Association,* 253 Minn. 101, 91 N.W.2d 122 (1958); *State ex rel. Turnbladh v. District Court, County of Ramsey,* 259 Minn. 228, 107 N.W.2d 307 (1960).

■ Moreover, the right to reverse an earlier, erroneous adjudication lasts until jurisdiction is lost by appeal or until a reasonable time has run, which would at least be co-extensive with the time required by statute for review. *Anchor Casualty,* 253 Minn. at 106, 91 N.W.2d at 126; *Turnbladh,* 259 Minn. at 236, 107 N.W.2d at 313. Since relator had 30 days to appeal the June 11, 1984, decision of the Commissioner's representative, Minn.Stat. § 268.10, subd. 5 (1982), the Commissioner's power to correct an erroneous determination existed, at a minimum, for the same 30-day period.

In *Pfalzgraff v. Commissioner of Economic Security,* 350 N.W.2d 458 (Minn.Ct. App.1984), this court reviewed the authority of an appeal referee to reverse, upon his own motion and without prior notice to the relator, his initial determination of eligibility. We noted in our opinion that there was no specific statutory authorization for the referee to reconsider his earlier decision upon his own initiative. Citing *Anchor Casualty,* we nevertheless affirmed the Commissioner's decision, stating:

**390**

In this case, the chairman's reversal came within the 30-day appeal period. And relator suffered no prejudice from lack of advance notice of the reversal because the commissioner vacated the amended decision and ordered a rehearing. Relator received notice of the rehearing and presented additional evidence and argued his interpretation of the eligibility statute at the hearing. 350 N.W.2d at 460.

There was no need for the Chief Commissioner's Representative to remand this case for the taking of additional evidence. There are no disputed facts that need to be resolved in order to determine whether the Commissioner's decision should be affirmed or reversed. The sole issue in the case is a legal one, i.e., whether an insurance company which is the sole source of funds to pay a home health care worker is an "employing unit" within the meaning of Minn.Stat. § 268.04, subd. 9.

■ The Commissioner of Economic Security is held to have the inherent power to reverse a Commissioner's representative when she believes that such decision is clearly erroneous as a matter of law.

### DECISION

An insurance company paying benefits to a handicapped individual for homecare is not an "agency" for the purposes of paying unemployment tax and for compliance with the administrative reporting requirements pursuant to Minn.Stat. § 268.04, subd. 9. The Commissioner's determination that an employer-employee relationship existed between the claimant and Farmers Insurance Exchange is erroneous and reversed.

Reversed.