**MINNEAPOLIS PARK & RECREATION BOARD, Relator,**

v.

**Leo H. LeCUYER and Commissioner of Jobs and Training, Respondents.**

**No. C0–90–81.**

Court of Appeals of Minnesota.

July 3, 1990.

Review Denied Sept. 20, 1990.

Duane G. Johnson, Sheila A. Engelmeier, MacKall, Crounse & Moore, Minneapolis, for relator.

Gary Bastian, Minneapolis, for Leo H. LeCuyer.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Jobs and Training.

Carla J. Heyl, St. Paul, for amicus curiae League of Minnesota Cities.

Considered and decided by KLAPHAKE, P.J., and RANDALL and HUSPENI, JJ.

## OPINION

RANDALL, Judge.

The Department of Jobs and Training determined that respondent Leo LeCuyer was entitled to receive unemployment benefits for periods when he was not working but was receiving compensation previously earned and set aside by his employer in a special account. We reverse.

## FACTS

Respondent Leo LeCuyer was employed as a mobile equipment operator for relator Minneapolis Park & Recreation Board ("Park Board"). LeCuyer was a full-time permanent intermittment worker, "on call" to do work when it was available.

The terms of a collective bargaining agreement between LeCuyer's union and the Park Board provided that a percentage of an employee's overtime earned would be paid into an "accumulated hours of service account". When an employee lacked 40 hours of wages within a work week, the Park Board would make payments to the employee from this account to make up a full pay check.

Between December 4, 1988 and May 26, 1989, LeCuyer worked for the Park Board on some days, received vacation pay on other days, and received some payments from his accumulated hours of service account. After December 4, 1988, LeCuyer applied for unemployment compensation benefits, claiming he was unemployed during those periods when he was not actually on the job site but instead was drawing

payments from his accumulated hours of service account. The Department of Jobs and Training initially determined that LeCuyer was ineligible to receive benefits, because he was not "unemployed" when he was receiving the compensatory overtime. LeCuyer appealed to a Department referee, who conducted a hearing.

The evidence at the hearing indicated that LeCuyer's overtime earnings went into his accumulated hours of service account as a sort of "bank". A witness for the Park Board testified that the intent of the collective bargaining agreement was to provide a bridge during times when no work was available. During the periods in which LeCuyer received payment from this account he continued to accrue vacation, sick leave, seniority, and pension credits the same as people still working.

Following the hearing, the referee determined that LeCuyer was "unemployed" during the periods he received payment from his accumulated hours of service account. The Park Board appealed to a Commissioner's representative, who affirmed. The Park Board has obtained a writ of certiorari, seeking review of the Commissioner's decision.

## ISSUE

Was LeCuyer "unemployed" during the time he was receiving payments from his accumulated hours of service account so as to entitle him to receive unemployment compensation benefits?

## ANALYSIS

■ Our review of the Commissioner's factual findings is limited to determining whether there is evidence in the record reasonably tending to sustain those findings. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). We need not defer to the Commissioner's legal conclusions, however. *McGowan v. Executive Express Transport Enterprises, Inc.*, 420 N.W.2d 592, 594 (Minn.1988).

■ The interpretation of statutes involves a question of law. *Toro Co. v. Commissioner of Economic Security*, 356 N.W.2d 789, 791 (Minn.App.1984). When interpreting statutes, it is our function to determine the legislature's intent. *Stearns–Hotzfield v. Farmers Insurance Exchange*, 360 N.W.2d 384, 387 (Minn.App. 1985).

■ The legislature has declared that unemployment benefits are to be used "for the benefit of persons unemployed through no fault of their own". Minn.Stat. § 268.03 (1988). "Unemployment" is defined as a period during which an individual "performs no service and with respect to which no wages are payable to the individual * * *." Minn.Stat. § 268.04, subd. 23 (1988). It is undisputed that LeCuyer was not performing services for the Park Board during the periods for which he received payments from his overtime account. However, the parties vigorously dispute whether the compensatory overtime payments constituted wages payable "with respect to" the weeks in which LeCuyer received them.

The Commissioner's representative cited *Novitsky v. Department of Natural Resources*, 320 N.W.2d 85, 87 (Minn.1982), which concluded that monies earned during an employee's base period but paid later constituted wage credits because they were "due and payable" at the time the work was performed according to Minn.Stat. § 268.04, subd. 26 (1980). Notably the statutory definition of "wage credits" relied on by *Novitsky* has since been amended. The present statute defines "wage credits" as "the amount of wages "paid within the base period" for insured work." Minn.Stat. § 268.04, subd. 26 (1988).

The Commissioner's representative also cited a 1958 letter by the Minnesota Attorney General, which advised that payments for compensatory overtime from an account credited to an employee's name should not be considered payable with respect to the prior weeks in which the services were actually rendered.

> Rulings of the attorney general, when they have been acted upon and have gone unchallenged for many years, are of much persuasive weight in statutory construction.

*In re Adoption of Anderson*, 235 Minn. 192, 199, 50 N.W.2d 278, 284 (1951).

Finally, the Commissioner's representative cited Minn.Stat. § 268.04, subd. 25a (1988) which provides:

"Wages paid" means the amount of wages which have been actually paid or which have been credited to or set apart for the employee so that payment and disposition is under the control of the employee. Wage payments delayed beyond their regularly scheduled pay date are considered "actually paid" on the missed pay date.

We find the above authority unpersuasive under the specific facts of the present case. Here, the parties entered into a collective bargaining agreement, the intent of which was to make overtime payable with respect to those weeks in which an employee would not receive a full 40 hours in regular wages. LeCuyer and his bargaining agent clearly intended that payment from the accumulated hours of service account would provide a bridge during periods in which no work was available. We agree with the Park Board's argument that payment from this overtime account is analagous to payment of a teacher's salary in monthly increments during the summer when the teacher is not actually on the job site. We do not know of any instance where an employee is genuinely laid off (and thus eligible for unemployment benefits) and then during that "layoff period" continues to accrue seniority and pension credits the same as fellow workers on the job.

To allow LeCuyer to receive unemployment compensation benefits in addition to payment from the accumulated hours of service account would appear to violate both the principle and the letter of the unemployment benefit statute.

### DECISION

LeCuyer was not entitled to unemployment compensation benefits during the periods he received payments from his overtime account.

Reversed.