*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1786**

Jolene Van Wyhe,
Relator,

vs.

Thermospas Hot Tub Products, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed May 11, 2015
Reversed
Chutich, Judge**

Department of Employment and Economic Development
File No. 32619513-3

John T. Sullivan, Ashleigh M. Leitch, Best & Flanagan LLP, Minneapolis, Minnesota (for relator)

Thermospas Hot Tub Products, Inc., Wallingford, Connecticut (respondent employer)

Lee B. Nelson, Munazza Humayun, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department)

Considered and decided by Smith, Presiding Judge; Chutich, Judge; and Minge, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Relater Jolene Van Wyhe brings a certiorari appeal of a determination that she is ineligible for unemployment benefits, arguing that the unemployment-law judge erred by concluding that she performed services 32 hours per week. Van Wyhe also asserts that the unemployment-law judge's 2012 decision, which found Van Wyhe eligible for benefits under identical circumstances, collaterally estops him from now finding her ineligible. Van Wyhe further urges this court to reverse a fraud determination. Because an employee who is on call away from the worksite for 32 hours per week but not working is not "performing services" under the statute, we reverse.

## FACTS

Jolene Van Wyhe began working for Thermospas Hot Tub Products, Inc. in 2008. She was laid off in December 2011 and then rehired by Thermospas in June 2012. A sales representative compensated by commission, Van Wyhe did not receive a salary or an hourly wage. Her position required her to go to appointments for potential customers; if no appointments were scheduled, Van Wyhe had to remain on standby, which she did mainly at home.

Thermospas required Van Wyhe to be available 30 hours per week; to participate in Thermospas's benefits program, she had to be available 32 hours per week.[1] Leads for possible customers were frequently scarce, and Van Wyhe often went two weeks without

---

[1] In her brief, Van Wyhe asserts that the benefits package only provided the opportunity to participate in Thermospas's health plan.

a lead. Because she was required to be on standby, she could not work another job. When she had no appointments, Van Wyhe did paperwork, followed-up with customers, and searched for more secure employment. She did ultimately find full-time work with another company. During the relevant time period at issue, Van Wyhe reported working an average of about 13 hours per week; the most she reported working in a week was 25 hours, and several weeks she reported fewer than 10 hours of work. Based on the numbers of hours and income Van Wyhe reported, she received unemployment benefits. Van Wyhe did not seek benefits for the time she spent working but instead for the periods when she was at home merely waiting to work.

In June 2014, the Minnesota Department of Employment and Economic Development (the department) asked Thermospas for Van Wyhe's wage and hour information from February 23, 2014, through May 31, 2014; Thermospas reported that Van Wyhe worked 40 hours a week each week.

On July 1, 2014, the department sent Van Wyhe a determination of ineligibility for this period, concluding that she worked more than 32 hours per week. On July 2, 2013, it sent her a fraud determination. On July 16, 2014, Van Wyhe timely appealed, and an evidentiary hearing on the ineligibility determination was conducted via telephone on July 30, 2014.

The unemployment-law judge issued a decision on August 1, 2014. The judge determined that Van Wyhe was ineligible for benefits from February 23 through May 31. He found that Van Wyhe reserved 32 hours a week to be on call and that while she was on call, she received compensation in the form of benefits and commissions.

Van Wyhe requested reconsideration. In her request, Van Wyhe informed the unemployment-law judge that he had previously conducted a hearing between Van Wyhe and Thermospas in 2012 on the same issue. Under identical circumstances, the same unemployment-law judge found that although she was on call for 66 hours per week, she did not work 32 hours or more per week. He therefore concluded that Van Wyhe was eligible for unemployment benefits in 2012. Despite this previous ruling, the unemployment-law judge nevertheless affirmed the August 2014 decision. Van Wyhe brought this certiorari appeal.

## D E C I S I O N

The purpose of the Minnesota Unemployment Insurance Program is to assist those who become unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2014). Chapter 268 is remedial in nature and must be applied in favor of awarding unemployment benefits. Minn. Stat. § 268.031, subd. 2 (2014). Any provision precluding an applicant from benefits must be narrowly construed. *Id.*

This court may affirm the decision of an unemployment-law judge or remand the case for further proceedings; it may also reverse or modify the decision if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision is affected by an error of law or unsupported by substantial evidence in view of the record as a whole. Minn. Stat. § 268.105, subd. 7(d) (2014).

An unemployment-law judge's factual findings are viewed in a light most favorable to the decision, and they will not be disturbed if the evidence substantially sustains them. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). But

4

whether an employee is ineligible to receive unemployment benefits is a question of law and reviewed de novo. *Bergen v. Sonnie of St. Paul, Inc.*, 799 N.W.2d 234, 236 (Minn. App. 2011).

## I.    Performing Services

Van Wyhe first argues that the unemployment-law judge erred as a matter of law by determining that she was "performing services" when she was on call and available 32 hours per week. The department counters that being available was the service that Van Wyhe performed.

An applicant is ineligible to receive unemployment benefits for any week if "the applicant is performing services 32 hours or more, in employment, covered employment, noncovered employment, volunteer work, or self-employment regardless of the amount of any earnings." Minn. Stat. § 268.085, subd. 2(6) (2014). Similarly, an applicant is considered "unemployed" in any week that the applicant "performs less than 32 hours of service in employment" and any earnings that week are less than the applicant's weekly unemployment benefit amount. Minn. Stat. § 268.035, subd. 26 (2014).

In his decision, the unemployment-law judge concluded that Van Wyhe worked 32 hours per week because she was "reserving 32 hours or more per week for employment with Thermospas," and that she was "working in this on-call capacity, and she was being compensated for this work in the form of benefits and commissions."

The outcome here turns on the meaning of "performing services." Section 268.035, the definition section of chapter 268, defines neither the phrase nor the words "perform" or "services" individually. We therefore must interpret the statute to decide

whether Van Wyhe is eligible for benefits. When we interpret statutes, nontechnical words and phrases not defined in a chapter are construed according to their common and approved usage. Minn. Stat. § 645.08(1) (2014).

"Perform," as a verb, is defined as "[t]o begin and carry through to completion; do," and "[t]o take action in accordance with the requirements of; fulfill." *The American Heritage Dictionary* 1305 (4th ed. 2000). "Service," as a noun, is defined as "performance of work or duties for a superior," and "[w]ork done for others as an occupation or business." *Id.* at 1591.

Based on these definitions, we conclude that the unemployment-law judge erred by determining that Van Wyhe was "performing services" for 32 hours per week. The definition of "perform" implies that some action was taken. Here, however, Van Wyhe was—for many hours a week—not performing any action on behalf of or for Thermospas; she was merely at home waiting to work. Although she testified that she spent some hours doing paperwork and following up with clients, these hours are reflected in the time she reported to the department. And no evidence shows that Van Wyhe was "performing" any "services" during the remaining hours of each week. Because Van Wyhe did not perform services for 32 or more hours per week, the unemployment-law judge erred by determining that she was ineligible for benefits.

Although no caselaw addresses this specific language at issue, we are persuaded by the reasoning in *Minneapolis Park & Recreation Bd. v. LeCuyer*, 457 N.W.2d 760 (Minn. App. 1990), *review denied* (Minn. Sept. 20, 1990). The issue in *LeCuyer* was whether an employee was "unemployed" under the statute when he was on call and not

6

working but received previously accumulated wages.[2]  *Id.* at 762.  The respondent-employee in *LeCuyer* was a full-time worker who was "'on call' to do work when it was available."  *Id.* at 761.  He filed for unemployment benefits for the periods when he was not actually at his work site.  *Id.* at 761-62.  This court stated, "It is undisputed that LeCuyer was not performing services for the Park Board during the periods for which [he was on call but not working]."  *Id.* at 762.

This reasoning supports the conclusion that an employee who is on call away from the worksite and waiting to work is not "performing services," and, therefore, is eligible for unemployment benefits so long as she is not engaging in other work-related duties for 32 or more hours per week.  Much like the employee in *LeCuyer*, Van Wyhe did not seek benefits for the time she spent at a work site, doing paperwork, or following up with clients, but instead for the periods when she was at home merely waiting to work.  Based on this analysis, the hours Van Wyhe spent waiting to receive sales leads that she could pursue were not spent "performing services," and the unemployment-law judge erred by concluding otherwise.

Because Van Wyhe did not "perform services" for 32 hours per week, the unemployment-law judge erred by determining that she was ineligible for benefits.

---

[2] *LeCuyer* dealt with an earlier version of chapter 268, which contained a different definition of "unemployment."  *Compare* Minn. Stat. § 268.04, subd. 23 (1988) (defining "unemployment" as "performs no service and with respect to which no wages are payable to the individual"), *with* Minn. Stat. § 268.35, subd. 26 (2014) (defining "unemployed" as "performs less than 32 hours of service in employment . . . [and] any earnings with respect to that week are less than the applicant's weekly unemployment benefit amount").

Based on this conclusion, we do not address Van Wyhe's argument regarding collateral estoppel.

## II.     Fraud

Van Wyhe next argues that the department's fraud determination requires reversal. The department concedes that it erred by failing to schedule an evidentiary hearing on this issue but claims that the finding of fraud is not properly before us.

Minnesota Statutes section 268.105, subdivision 7(a) (2014), states that we will review an unemployment-law judge's decision on reconsideration provided that a petition for a writ of certiorari is filed with the court. Because no hearing was held on the fraud issue, and therefore no decision on reconsideration was rendered, the department is correct that this issue is not properly before us. But we note that based on our decision above, this issue is now likely moot.

**Reversed.**