**Richard NOVITSKY, Relator,**

**v.**

**DEPARTMENT OF NATURAL RESOURCES, Respondent,**

**Commissioner of Economic Security, Respondent.**

No. 81–954.

Supreme Court of Minnesota.

June 4, 1982.

Richard Novitsky, pro se.

Warren Spannaus, Atty. Gen., St. Paul, for Dept. of Natural Resources.

Warren Spannaus, Atty. Gen., and Peter C. Andrews, Asst. Atty. Gen., St. Paul, for respondent.

OTIS, Justice.

Richard Novitsky, an employee of the Department of Natural Resources, petitions this court to review a decision of the Commissioner of the Department of Economic Security concerning the compensation benefits the employee was entitled to receive.

Novitsky had been employed as an equipment operator until his layoff on October 20, 1980. He filed a claim for unemployment compensation benefits on October 27, 1980. Pursuant to Minn.Stat. § 268.04, subd. 2 (1980), the claim was assigned an effective date of October 26, 1980, and by operation of section 268.04, subd. 4 (1980), Novitsky's base period of employment was determined by the Department of Economic Security to have begun October 28, 1979 and to have ended October 25, 1980.

In determining the "Wage credits" under Minn.Stat. § 268.04, subd. 26 (1980), for the purpose of computing the weekly and the maximum amount of unemployment compensation benefits to which relator would be entitled, the Department failed to include $669.60 earned for the pay period ending October 21, 1980, and $301.32 earned for the pay period ending November 4, 1980. The basis for the decision to exclude these amounts was that actual payment was not received until October 31, 1980 and November 14, 1980, respectively, which was after the base period of employment.

Relator appealed the decision to exclude these amounts on November 14, 1980. The Appeal Tribunal concluded that the exclusion of amounts earned by the relator before the effective date of his claim for unemployment compensation but paid thereafter was proper and in accordance with the law. It reasoned as follows:

While it is true that the claimant earned these wage credits during his base period, the fact remains that said wages were paid outside of his base period and cannot be included as wage credits pursuant to Minnesota Statutes, Section 268.04, Subdivision 26, because they were not "due and payable" within the base period. The words "due and payable" mean that

the time for payment has arrived. * * * For state employees the "time for payment" arrives 10 days after the close of the pay period.

The decision of the Appeal Tribunal was affirmed by the Commissioner, Department of Economic Security.

Because we believe that the Department was mistaken in its interpretation of the phrase "wages due and payable but not paid" we reverse.

The weekly and maximum amounts of unemployment compensation benefits are determined according to the provisions of Minn.Stat. § 268.07, subd. 2 (1980), which states in part:

> [B]enefits shall be payable to such individual during his benefit year as follows:
>
> (1) Weekly benefit amount shall be equal to [a percentage] of the average weekly wage of such individual. * * *

The definition of "average weekly wage" is "the quotient derived by dividing the total wage credits earned by an individual from all employers in insured work in the base period by the number of credit weeks." Minn.Stat. § 268.04, subd. 30 (1980). "Wage credits" are further defined in Minn. Stat. § 268.04, subd. 26 (1980), as "the amount of wages paid and *wages due and payable but not paid* by or from an employer to an employee." * * * Reasoning that due and payable means that the time for payment has arrived and that the time for payment of wages earned by state employees arrives 10 days after the close of a pay period, the Commissioner held that the money relator had earned during the base period but which was not paid until after was not included in his wage credits. We cannot agree that wages actually earned by the employee during his base period are not due and payable. The fact that the employer has an accounting system with a 10-day time lapse before payment does not affect the fact that the employee has done everything necessary to entitle him to the wages.

It is true that the interpretation offered by the Department may work to the benefit of employees. If the base period is terminated at an earlier point the employee is entitled to benefits after a shorter waiting period than if the base period is extended during the time he continues to receive wages earned. While the immediate benefits are lower because the wage credits encompass a smaller amount, the employee expecting a short lay-off would want to receive the benefits as soon as possible. Whatever the practical trade-offs involved, we believe the wording of the statute is clear. In our view the time for payment arrives when the work has been performed. Accordingly we reverse.