Keith J. **TUMA**, Relator,

v.

**DEPARTMENT OF ECONOMIC SECURITY, Respondent.**

No. C1–85–723.

Court of Appeals of Minnesota.

Sept. 17, 1985.

Bernard P. Becker, Eric S. Janus, St. Paul, for relator.

Hubert H. Humphrey, III, Atty. Gen., James Patrick Barone, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and LANSING, JJ.

## OPINION

POPOVICH, Chief Judge.

Relator, Keith Tuma, appeals from the Commissioner of Economic Security's determination that he was not entitled to extended benefits pursuant to Minn.Stat. § 268.071 (1984). We affirm.

## FACTS

Relator was discharged on February 9, 1984. On February 17, 1984 he applied for unemployment benefits. A base period was established from February 13, 1983 to

February 11, 1984—the first day of the week in which he filed his claim. During his base period, relator earned $1675 but received only $1521. He received his final paycheck on February 17, six days after the close of his base period. This was on the regular employer's payment schedule. A claims deputy determined relator was entitled to only $1521 in wage credits.

Exclusion of relator's final paycheck from his base period disqualified him from receiving extended benefits under Minn. Stat. § 268.071 (1984). Relator contested the exclusion of his last paycheck from his base period. A referee affirmed the claims deputy's decision, and a Commissioner's representative affirmed the referee.

### ISSUES

1. Must relator's "wage credits" include wages earned but not paid during his base period?

2. Were relator's wages "delayed beyond the usual time of payment" for purposes of defining "wage credits" under Minn.Stat. § 268.04, subd. 26 (1984)?

### ANALYSIS

■ 1. Minn.Stat. § 268.071, subd. 3(3) (1984) provides:

An individual shall be eligible to receive extended benefits with respect to any week of unemployment in his eligibility period only if the commissioner finds that with respect to such week:

\* \* \* \* \* \*

(3) He has, *during his base period earned wage credits* available for benefit purposes of not less than 40 times his weekly benefit amount as determined pursuant to section 268.07, subdivision 2.

*Id.* (emphasis added). The base period is defined as "the period of 52 calendar weeks immediately preceding the first day of an individual's benefit year." *Id.* § 268.04, subd. 2. Relator argues he *earned* additional wage credits during his base period, even though his wages were not actually paid until after his base period. The statute expressly requires *wage credits* must

be earned during his base period, rather than wages. Legislative history of the term "wage credits" indicates it does not include wages earned but not paid during an employee's base period.

Prior to 1983, the term "wage credits" was defined as:

the amount of wages paid and wages due and payable but not paid by or from an employer to an employee for insured work \* \* \*.

Minn.Stat. § 268.04, subd. 26 (1982). The Minnesota Supreme Court determined the phrase "due and payable but not paid" included wages earned by an employee during his base period but not paid until thereafter. *Novitsky v. Department of Natural Resources,* 320 N.W.2d 85 (Minn.1982). The legislature in the 1983 session, immediately following the *Novitsky* decision, amended the definition of "wage credits" as follows:

the amount of wages actually or constructively paid, wages overdue and delayed beyond the usual time of payment and back pay paid by or from an employer to an employee for insured work \* \*.

Minn.Stat. § 268.04, subd. 26 (Supp.1983).

■ 2. The object of statutory construction is to determine the legislature's intent. *Stawikowski v. Collins Electric Construction Co.,* 289 N.W.2d 390, 395 (Minn.1979); Minn.Stat. § 645.16 (1984). When the statute's meaning is apparent, it may not be construed in a different manner. *McCaleb v. Jackson,* 307 Minn. 15, 17 n. 2, 239 N.W.2d 187, 188 n. 2 (1976). By using the term "earned wage credits" in the extended benefits statute rather than "earned wages," the legislature intended that an employee's entitlement to extended benefits depend on the amount of wage credits an employee is entitled to, rather than the amount of wages earned during the base period. An employee cannot "earn" wage credits unless wages have been "actually or constructively paid [or] overdue and delayed beyond the usual time of payment." Minn.Stat. § 268.04, subd. 26. Relator's additional wages, although earned during his base period, had not been

actually or constructively paid, since his last regular scheduled payday did not occur until after his base period.

█ Relator claims *Mrkonjich v. Erie Mining Co.*, 334 N.W.2d 378 (Minn.1983) provides that backpay will be counted in determining wage credits if the backpay award period falls within the employee's base period. Relator then argues an employee's delayed paycheck should similarly be counted in determining wage credits. However, the specific statutory definition of "wage credits" is clear. We cannot read into the statute that which is not there. *See Commissioner of Revenue v. Richardson*, 302 N.W.2d 23, 26 (Minn.1981).

█ 3. Relator also argues his wages were immediately due and payable upon his discharge, and were therefore "overdue and delayed beyond the usual time of payment," within the meaning of Minn.Stat. § 268.04, subd. 26. Relator cites Minn. Stat. § 181.13 (1984), which provides:

> When any person, firm, company, association, or corporation employing labor within this state discharges a servant or employee, the wages or commissions actually earned and unpaid at the time of the discharge shall become immediately due and payable *upon demand of the employee* * * *.

*Id.* (emphasis added). However, relator did not demand his wages prior to the regular scheduled time for payment. The above statute is inapplicable. *See Chatfield v. Henderson*, 252 Minn. 404, 411, 90 N.W.2d 227, 232 (1958).

We recognize the extended benefits statute may at times deny benefits to employees whose paychecks are regularly paid on schedule after a delay, while other employees whose wages are paid immediately may qualify for extended benefits. This possibility of different treatment is for the legislature to remedy. The present statutory language compels our interpretation.

### DECISION

The Commissioner's representative properly determined relator was not entitled to extended benefits.

Affirmed.

█

LANSING, Judge (dissenting).

I respectfully dissent from the opinion of the majority. Nothing in the definition of "wage credits" suggests that a person who has earned the requisite number of wage credits during the base period may be disqualified from receiving extended benefits simply because those wages were paid after the base period.

Wage credits are defined as:

> the amount of wages actually or constructively paid, wages overdue and delayed beyond the usual time of payment and back pay * * * for insured work * *.

Minn.Stat. § 268.04, subd. 26 (1984). The definition includes all wages paid, but it establishes no time frame in which the wages must have been paid. Instead, Minn.Stat. 268.071, subd. 3(3), provides that eligibility for extended benefits depends on a determination that the individual "during his base period *earned* wage credits available for benefit purposes of not less than 40 times his weekly benefit amount * * *" (emphasis added). In addition, the average weekly wage, from which the amount of weekly benefits is computed, is defined as "the quotient derived by dividing the total wage credits *earned* by an individual * * * in the base period by the number of credit weeks." Minn.Stat. § 268.04, subd. 30 (emphasis added).

The Commissioner's representative concluded, despite the language quoted above, that wages do not become wage credits unless they are *paid* within the base period, and that an individual does not acquire "credit weeks" unless the person is paid during the base period for services performed during the base period. He further concluded that

> use of the term "earned" in the definition of "average weekly wage" is gratuitous language. * * * The net result * * * is that an individual could not, if an employer pays on a one week delayed basis, ever obtain fifty-two "credit weeks" dur-

**450**

ing their base period if they filed an unemployment claim immediately after becoming separated from employment. This is simply the way the system operates, essentially to facilitate the prompt payment of benefits.

The Commissioner's reading substitutes the word "paid" for the word "earned" in Minn.Stat. § 268.071, subd. 3(3), simply for purposes of expediency. If Keith Tuma had demanded the pay he had already earned immediately upon discharge, or if he had waited to apply for unemployment benefits until he received his final paycheck, he would be eligible for extended benefits. The statute does not require such an arbitrary result, and the construction urged by the Commissioner and adopted by the majority is impermissible in view of the legislative policy of lightening the burdens of involuntary unemployment. *See* Minn.Stat. § 268.03 (1984).