**Keith J. TUMA, Petitioner, Appellant,**

v.

**COMMISSIONER OF ECONOMIC SECURITY, Respondent.**

**No. C1–85–723.**

Supreme Court of Minnesota.

May 9, 1986.

---

Bernard P. Becker, Eric S. Janus, William Mitchell Law Clinic, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., James Patrick Barone, Sp. Asst. Atty. Gen., St. Paul, for respondent.

AMDAHL, Chief Justice.

Appellant, Keith J. Tuma, seeks further review of a decision of the Court of Appeals, which upheld the Commissioner of Economic Security's ruling that Tuma is ineligible for extended unemployment benefits under Minn.Stat. § 268.071(1984). The Commissioner, through her representative, denied Tuma extended benefits because Tuma was allegedly $60 short of the total wage credits needed under Minn.Stat. § 268.071, subd. 3(3), to qualify. In calculating Tuma's wage credits under subdivision 3(3), however, the Commissioner excluded Tuma's final paycheck on the grounds that it did not constitute "wage credits" under Minn.Stat. § 268.04, subd. 26 (1984). Tuma appealed this decision to the Court of Appeals, which upheld the Commissioner's ruling. We now reverse the decision of the Court of Appeals and hold that Tuma is entitled to extended unemployment benefits.

On February 9, 1984, Keith Tuma was terminated as an employee of Graham Towing, Incorporated. Tuma had been employed as a tow truck driver for Graham and was laid off for economic reasons. Tuma applied for unemployment compensation on February 17, 1984. His application was made effective February 12, 1984, which gave him a base period for calculating unemployment compensation of Febru-

ary 13, 1983, to February 11, 1984. *See* Minn.Stat. § 268.04, subd. 2.

Tuma's total wages for his base period amounted to $7,711.14. Of this amount, however, only $7,537.14 was included by the Commissioner within his base period in order to determine unemployment compensation. The other $174 was excluded from the calculation of extended benefits because it had not actually been paid to Tuma within his base period. Excluding this amount left Tuma $60 short of the amount needed for him to qualify for extended benefits under Minn.Stat. § 268.071, subd. 3. The $174 represented wages paid to Tuma by Graham for work performed on February 6–8, 1984. Under Graham's method of paying wages, the wages for those 3 days fell within a pay period that ended February 12, 1984. The wages were not paid, however, until February 17, 1984, because Graham's payment schedule required that wages earned during one payment period be paid 5 days after that period ended.[1]

When Tuma applied for extended benefits, a Department of Economic Security claims deputy denied his request. The deputy determined Tuma was ineligible for extended benefits because he had earned insufficient "wage credits" during his base period. The $174 received by Tuma on February 17, 1984, was excluded from consideration as earned wage credits under Minn.Stat. § 268.071, subd. 3(3), because the funds had not actually been paid to Tuma prior to the end of his base period on February 11, 1984.

Tuma appealed the deputy's decision and an evidentiary hearing was held before a referee. The referee upheld the deputy's decision, ruling that the definition of "wage credits" in Minn.Stat. § 268.04, subd. 26, did not include the $174 earned by Tuma on February 6–8 but not paid to him until February 17. The referee adopted the Commissioner of Economic Security's inter-

pretation of the definition of "wage credits" in making this ruling.

The referee's decision was affirmed on appeal by a representative of the Commissioner. The representative ruled that the definition of "wage credits" included only those wages both earned by and paid to an employee during the employee's base period. Wages earned during a base period, but not paid to the employee until after the base period ended, were excluded from the definition of "wage credits" under the Commissioner's interpretation. The Commissioner's interpretation was based on a 1983 amendment to the definition of "wage credits" in Minn.Stat. § 268.04, subd. 26. The Commissioner interpreted the 1983 amendment as effectively overruling our decision in *Novitsky v. Department of Natural Resources*, 320 N.W.2d 85 (Minn. 1982). In *Novitsky*, we ruled that, under the prior definition of "wage credits," wages earned by an employee within his base period, but not paid to the employee until after his base period had ended, were included within the employee's base period as wage credits.

On a writ of certiorari, the Court of Appeals affirmed the Commissioner's decision in all respects, adopting the Commissioner's interpretation of "wage credits" under subdivision 26. *See Tuma v. Commissioner of Economic Security*, 374 N.W.2d 446 (Minn.App.1985). The court held that the general rules of statutory construction required that the Commissioner's interpretation of "wage credits" be upheld.

Extended unemployment compensation benefits are provided for in Minn.Stat. § 268.071 (1984). In order for an individual to qualify for extended benefits, the state must first be experiencing a period of high unemployment. *See* Minn.Stat. § 268.071, subds. 1(1)–(3), (6)–(8), 6 (1984). After the state has entered into an extended benefits period, the employee must also qualify for extended benefits. *See id.*, subd. 3. Subdi-

---

**1.** Graham's normal pay periods ran from Monday through the following Sunday, with pay-   ment being made 5 days later on Friday.

vision 3 lists three requirements an employee must meet before he or she can receive extended benefits:

Subd. 3. **Eligibility requirements for extended benefits.** An individual shall be eligible to receive extended benefits with respect to any week of unemployment in his eligibility period only if the commissioner finds that with respect to such week:

(1) He is an "exhaustee" as defined in subdivision 1, clause (9);

(2) He has satisfied the requirements of this law for the receipt of regular benefits that are applicable to individuals claiming extended benefits, including not being subject to a disqualification for the receipt of benefits, except that an individual disqualified for benefits pursuant to section 268.09, subdivision 1, clause (6) is not eligible for extended benefits unless the individual has, subsequent to the disciplinary suspension, earned at least four times his or her weekly extended benefit amount; and

(3) He has, during his base period earned wage credits available for benefit purposes of not less than 40 times his weekly benefit amount as determined pursuant to section 268.07, subdivision 2.

*Id.* The present appeal concerns the last of these requirements, that an employee have earned a certain number of wage credits within his or her base period.

"Wage credits" is currently defined as: the amount of wages actually or constructively paid, wages overdue and delayed beyond the usual time of payment and back pay paid by or from an employer to an employee for insured work and tips and gratuities paid to an employee by a customer of an employer and accounted for by the employee to the employer except that wages earned in part-time employment by a student as an integral part of an occupational course of study, under a plan for vocational edu-

cation accepted by the Minnesota department of education, shall not result in wage credits available for benefit purposes.

Minn.Stat. § 268.04, subd. 26 (1984).[2] Prior to 1983, "wage credits" was defined as: the amount of wages paid and wages due and payable but not paid by or from an employer to an employee for insured work and tips and gratuities paid to an employee by a customer of an employer and accounted for by the employee to the employer except that wages earned in part-time employment by a student as an integral part of an occupational course of study, under a plan for vocational education accepted by the Minnesota department of education, shall not result in wage credits available for benefit purposes.

Minn.Stat. § 268.04, subd. 26 (1982).

In *Novitsky v. Department of Natural Resources,* 320 N.W.2d 85 (Minn.1982), we interpreted the 1982 definition of "wage credits." We held that the language "wages due and payable but not paid" included all wages earned during a base period even if they were not actually paid to the employee until after the base period ended. *Id.* at 87. In doing so, we rejected the Commissioner of Economic Security's interpretation of "wage credits" that wages earned by, but not paid to, an employee during his base period were not considered "wage credits" under the statute. *Id.*

In 1983, the legislature amended the definition of "wage credits" from "wages due and payable but not paid" to "wages actually or constructively paid * * *." *See* Act of June 14, 1983, ch. 372, § 5, 1983 Minn. Laws 2568. The Department has since reapplied its prior interpretation of wage credits to this new definition.

The dispute in this case concerns the proper interpretation of the definition of "wage credits" in subdivision 26. The par-

---

**2.** "Base period" is defined as "the period of 52 calendar weeks immediately preceding the first day of an individual's benefit year." Minn.Stat. § 268.04, subd. 2 (1984). "Benefit year" is de-

fined as "the period of fifty-two calendar weeks beginning with the first day of the first week with respect to which the individual files a valid claim for benefits." *Id.,* subd. 4.

ties disagree over the proper meaning of the language "wages actually or constructively paid" as it now exists in the statute. The Commissioner argues that the language is unambiguous and requires us to apply the plain meaning of the definition of "wage credits." The plain meaning of this language, the Commissioner argues, is the same as the Department's interpretation [3] of "wage credits," that wages not actually received by an employee within his base period are excluded from the definition of wage credits. Tuma, on the other hand, contends that the statutory language is ambiguous and that it must properly be interpreted to include all wages earned within a base period, regardless of whether such wages are actually paid to the employee during that period.

We must apply the rules of statutory construction to this case. Our objective when construing a statute is to ascertain and effectuate the legislature's intent. *Peterson v. Haule*, 304 Minn. 160, 170, 230 N.W.2d 51, 57 (1975); Minn.Stat. § 645.16 (1984). Where the words of a statute are clear and free from ambiguity, we have no right to construe or interpret the statute's language. Our duty in such a case is to give effect to the statute's plain meaning. *McCaleb v. Jackson*, 307 Minn. 15, 17 n. 2, 239 N.W.2d 187, 188 n. 2 (1976); *Hughes v. Patrick & Associates*, 300 Minn. 387, 389, 220 N.W.2d 347, 348 (1974); Minn.Stat. § 645.16. If a statute is ambiguous, however, we must then determine the probable legislative intent and give the statute a construction that is consistent with that intent. *Beck v. City of St. Paul*, 304 Minn. 438, 445, 231 N.W.2d 919, 923 (1975); Minn. Stat. § 645.16. A statute is ambiguous when it can be given more than one reasonable interpretation. *See Beck*, 304 Minn. at 445, 231 N.W.2d at 923. Section 645.16 lists eight factors that can be used to determine legislative intent.

We believe that the "actually or constructively paid" language in subdivision 26 is ambiguous. Although the meaning of "actually paid" is quite clear, it is difficult to determine just what the legislature intended by the phrase "constructively paid." The Commissioner interprets "constructively paid" to mean the point at which the *employer* has taken all steps necessary to accomplish payment. Another reasonable interpretation of "constructively paid," however, would view payment from the *employee's* standpoint, allowing wages to be constructively paid whenever the employee has done all that is necessary for him or her to receive payment. Because subdivision 26 is subject to two reasonable interpretations, it is ambiguous. We must therefore determine what the legislature intended by this language.

The general legislative intent behind Minnesota's unemployment compensation law is found in Minn.Stat. § 268.03 (1984). Section 268.03 mandates:

> The legislature * * * declares that in its considered judgment the public good and the general welfare of the citizens of this state will be promoted by providing * * for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

*Id.* This declaration of the public policy behind Minnesota's unemployment security law indicates that the law should be read liberally in order to protect those "unemployed through no fault of their own." Such protection could better be accomplished by allowing all earned wages to be included as wage credits in order to determine eligibility for extended benefits.

---

**3.** In an internal agency memorandum, the Department interpreted the 1983 amendment of the definition of "wage credits":

> [Subdivision] 26 * * * also contain[s] the following new language regarding wages: 'actually or constructively' paid * * *. 'Constructively' paid means that the employer has taken all the steps that are customarily taken to accomplish payment even though the employ-

ee may not have actually received payment. This amendment nullifies the effect of Minnesota Supreme Court Decision, *Novitsky v. Department of Natural Resources* * * * which held that base period wages included wages earned by the employee during the base period even though they may be paid after the end of the base period.

In addition to examining the general legislative intent behind the unemployment compensation law, we may consider the mischief to be remedied and the object to be attained by the law in question. *See* Minn.Stat. § 645.16(3)–(4). Viewing chapter 268 in this manner, section 268.071 should be interpreted so as to provide an employee with the extended unemployment compensation benefits he is entitled to based on the full extent of his previous work. To do otherwise would undermine the objective the legislature sought to attain in passing chapter 268.

Finally, we may consider the possible consequences of a particular interpretation of a statute when construing its meaning. *See* Minn.Stat. § 645.16(6). As admitted by the Commissioner, interpreting the definition of wage credits to exclude funds not actually received within a base period means that the majority of employees could never obtain 52 weeks of wage credits. Their 52-week base period is shortened to something less than the statutorily prescribed period simply because they are compensated on a delayed payment basis.[4] This interpretation conflicts with the general intent of chapter 268 that a discharged employee is entitled to unemployment compensation benefits based on the full extent of his previous employment. Such a conflict vitiates against adopting the Commissioner's interpretation of "wage credits." *See Olympia Brewing Co. v. Commissioner of Revenue*, 326 N.W.2d 642, 648 (Minn. 1982) (administrative ease, although a legitimate concern, does not justify an interpretation of a statute which is inconsistent with its purpose).

The Commissioner argues, however, that we must give deference to the Depart-

ment's interpretion in this case. While we will give deference to an agency's interpretation of a statute in certain cases, *see Arvig Telephone Co. v. Northwestern Bell Telephone Co.*, 270 N.W.2d 111, 114 (Minn. 1978); *Minnesota Microwave, Inc. v. Public Service Commission*, 291 Minn. 241, 245, 190 N.W.2d 661, 665 (1971), we are not bound by its interpretation. In this case, we believe that little deference must be given to the Department's interpretation, particularly in light of the statute's ambiguity and the fact that we previously rejected the same interpretation in *Novitsky*. It would be unjustified for us in this case to adopt the Department's interpretation where the language of the statute is unclear and the Department's interpretation conflicts with the general intent of the underlying law.

Our analysis leads to the conclusion that the language "actually or constructively paid" in the definition of "wage credits" was meant to include all wages earned by an employee within his or her base period, regardless of whether the wages are received during the base period. The ambiguity of the language, along with the legislature's preference for a broadly construed unemployment compensation law, require this conclusion. We therefore reverse the Court of Appeals and hold that Tuma is entitled to have his last paycheck of $174 included under Minn.Stat. § 268.071, subd. 3(3), when his extended benefits are calculated.

Reversed.

---

**4.** The Commissioner attempts to justify the need to exclude an employee's final wages on the basis of efficiency. She argues that because employers are required to submit wage records on a discharged employee soon after the employee has filed for unemployment compensation benefits, the employer should not be required to include his final wages in those records. Including an employee's final wages requires employers to make additional bookkeeping and other calculations that delay the ultimate submission of the wage records to the Department. Excluding such wages allows an employer to simply check his last wage records to determine the proper amounts. While we question the validity of this reasoning for any case, we note that in Tuma's case he was applying for extended benefits. Tuma's extended benefits calculations would have been made long after Graham calculated Tuma's final wages and therefore the Commissioner's reasoning is inapplicable to this case.