**D & B ENTERPRISES OF WINONA, INC., d/b/a Winona Kawasaki, Plaintiff,**

v.

**KAWASAKI MOTORS CORP., U.S.A., a Delaware Corporation, Defendant.**

**Civ. No. 3–90–661.**

United States District Court, D. Minnesota, Third District.

May 12, 1992.

**654**

Phillip P. Hansen, Hansen Law Office, Winona, Minn., for plaintiff.

Andrea J. Kaufman, Robert J. Schmit, Opperman Heins & Paquin, Minneapolis, Minn., for Kawasaki Motors Corp., U.S.A.

Phillip P. Hansen, Hansen Law Office, Winona, Minn., for D & B Enterprises of Winona, Inc.

## ORDER

LEBEDOFF, United States Magistrate Judge.

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on March 16, 1992, on Defendant's Motion in Limine.

Based on all the files, records and proceedings herein,

IT IS HEREBY ORDERED that:

1. Defendant Kawasaki Motors Corporation's Motion in Limine is GRANTED.

2. The attached memorandum is herein incorporated.

## MEMORANDUM

### I. FACTS

Defendant Kawasaki Motors Corporation ("KMC") manufactures and distributes Kawasaki motorcycles, parts and accessories. Plaintiff D & B Enterprises, d/b/a Winona Kawasaki ("Winona Kawasaki") became an authorized Kawasaki dealer in May, 1984. On January 5, 1990, Winona Kawasaki voluntarily terminated its dealership, effective February 15, 1990.

Winona Kawasaki requested that KMC purchase from Winona Kawasaki its Kawasaki vehicle and parts inventory pursuant to Minn.Stat. § 80E.09, which reads in pertinent part:

**Payments required upon termination, cancellation, or non-renewal.**

**Subdivision 1. Requirements.** Upon the termination, cancellation, or non-renewal of any franchise, the new motor vehicle dealer shall, in the time prescribed, be allowed fair and reasonable compensation by the manufacturer for the following items:

(a) New motor vehicle inventory which was originally acquired from the manufacturer, as limited in clause (f);

(b) Equipment and furnishings if the new motor vehicle dealer purchased them from the manufacturer;

(c) Special tools;

(d) Supplies, including accessories and parts, purchased from the manufacturer....

Minn.Stat. § 80E.09 (1990).

The statute further provides that the dealer must repurchase vehicles at 100% of dealer net cost and parts and accessories at 100% of current net prices plus an additional 5% to compensate for parts handling. Minn.Stat. § 80E.09, subd. 1(f) (1990).

Winona Kawasaki submitted an inventory to KMC listing parts and accessories on hand of approximately $111,000.00 value. KMC determined that $18,421.59 of parts could have been purchased directly from KMC, and offered to repurchase only those parts. Winona Kawasaki contends that the statute mandates that KMC repurchase *all* parts which *originated* from Kawasaki, even though many of the parts were acquired at closeout sales or auctions at discounted prices.

### II. DISCUSSION

Defendant KMC argues that the plain meaning of Minn.Stat. § 80E.09 dictates that KMC must only repurchase parts and inventory which Winona Kawasaki pur-

chased directly from KMC. In response, Plaintiff Winona Kawasaki notes that the word "directly" is not in the statute, and thus the Court is not compelled to interpret it to mean "purchased directly." Further, Plaintiff claims that the words of the statute are not explicit, and the Court must consider other factors, including public policy, in determining the meaning of the statute.

### A. *Plain Meaning*

When construing a statute, the court's objective is to ascertain and effectuate the legislature's intent. *Tuma v. Commissioner of Economic Rev.*, 386 N.W.2d 702, 706 (Minn.1986). Where the words of a statute are clear and free from ambiguity, the duty of the court is to give effect to the statute's plain meaning. *Id.*

This Court finds that the meaning of the statute is clear on its face. The phrases "originally acquired from the manufacturer," "if the dealer purchased them from the manufacturer," and "purchased from the manufacturer," clearly show that the legislature intended for the repurchasing of inventory which had been supplied by the manufacturer itself, not a third party. The words "acquired" and "purchased" indicate a direct transaction between the dealer and manufacturer. If the legislature had intended otherwise, it could have drafted the statute to mandate repurchase of all inventory "manufactured" or "made" by the manufacturer, or it could have required the repurchase of inventory which "originated from" the manufacturer. However, since the legislature conditioned repurchase on transactions between dealers and manufacturers, this Court finds that the legislature did not intend for manufacturers to buy back inventory which it did not itself sell to dealers.

### B. *Public Policy*

Even if the language of the statute was ambiguous, public policy favors the interpretation promoted by KMC. Chapter 80E was first adopted in 1981 "in order to prevent fraud, impositions and other abuses upon citizens and to protect and preserve the investments and properties of the citizens of this State." Minn.Stat. § 80E.01 (1990).

In the present case, Winona Kawasaki is not claiming that KMC has defrauded or abused Winona Kawasaki. The statute was drafted to preserve Winona Kawasaki's "investment" in its dealership. However, KMC did not require Winona Kawasaki to purchase the inventory at issue here as a condition of its dealership. Rather, the inventory at issue here was purchased by Winona Kawasaki on speculation, at prices lower than it would have paid to KMC, in hopes that it could resell at a higher profit margin.

Further, Winona Kawasaki's proposed statutory interpretation requires that a dealer receive more for its inventory than the dealer actually paid. Public policy does not favor such an interpretation as the statute was drafted to protect investments, rather than to burden manufacturers. Under Winona Kawasaki's theory, it would be entitled to 105% of the current value for parts, even if the parts were purchased from a third party at half that value. This proposed judicial construction goes far beyond protecting a dealer's investment and ensures a dealer windfall. This Court finds that such an interpretation is contrary to public policy and should be rejected. Accordingly, Defendant KMC's Motion in Limine will be granted.