**In the Matter of the CEASE AND DESIST ORDER ISSUED TO Thomas D. LOYD.**

**No. C0–96–1552.**

Court of Appeals of Minnesota.

Dec. 10, 1996.

Thomas D. Loyd, Burnsville, pro se relator.

Hubert H. Humphrey, Attorney General, Paul A. Strandberg, Assistant Attorney General, St. Paul, for respondent Department of Agriculture.

Considered and decided by SHORT, P.J., and DAVIES and THOMAS G. FORSBERG,* JJ.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

SHORT, Judge.

Loyd appeals from a decision by the Commissioner of the Minnesota Department of Agriculture reinstating a cease and desist order against Loyd's urban lawn care service. Loyd argues he is not subject to the licensing requirements of Minn.Stat. §§ 18B.33 and 18C.415, because he utilizes only nonrestricted-use pesticides and prepackaged fertilizers.

## FACTS

Thomas D. Loyd earns his living performing lawn care services in the Twin Cities area. Loyd's business services include the application of nonrestricted-use pesticides and prepackaged fertilizers to customers' lawns. From the time he launched his business until 1995, Loyd held commercial pesticide and fertilizer applicator licenses issued by the Minnesota Department of Agriculture (MDA).

When Loyd failed to renew his licenses, the MDA ordered him to cease and desist from the use of pesticides and fertilizers in his lawn care business. Following a hearing, an administrative law judge (ALJ) found the statutory licensing requirements for both pesticides and fertilizers applied only to agricultural uses of the products, and not to urban lawn care services such as Loyd's. Furthermore, the ALJ determined that even if lawn care uses of the products fell within the coverage of the statutes, Loyd need not be licensed because the statutes applied only to restricted-use pesticides and bulk fertilizers, which Loyd did not utilize.

The MDA Commissioner (commissioner) declined to accept the conclusions of the ALJ, finding, instead, that Loyd was subject to the licensure requirements of Minn.Stat. §§ 18B.33 and 18C.415. Loyd appeals on writ of certiorari from the commissioner's reinstatement of the cease and desist order.

## ISSUES

I. Does Minn.Stat. § 18B.33 require Loyd to maintain a license for use of nonrestricted-use pesticides?

II. Does Minn.Stat. § 18C.415 require Loyd to maintain a license for use of prepackaged fertilizers?

## ANALYSIS

The construction of statutes presents a question of law, which this court reviews de novo. *St. Otto's Home v. Minnesota Dep't of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn.1989) (requiring de novo review of agency decisions involving questions of law); *Arvig Tel. v. Northwestern Bell Tel.*, 270 N.W.2d 111, 114 (Minn.1978) (noting statutory interpretation presents legal issue). Our function in interpreting statutes is to ascertain and effectuate the intention of the legislature. Minn.Stat. § 645.16 (1994); *State ex rel. Graham v. Klumpp*, 536 N.W.2d 613, 615 (Minn.1995). When a statute is free from ambiguity, we look only at its plain language. Minn.Stat. § 645.16; *Tuma v. Commissioner of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn.1986). This case requires us to decide whether the licensing statutes for pesticide and fertilizer use apply to lawn care services that use only nonrestricted-use pesticides and prepackaged fertilizers.

### I.

Minn.Stat. § 18B.33, subd. 1(a) (1994), provides that "[a] person may not apply a pesticide for hire without a commercial applicator license for the appropriate use categories * * *." The statute offers a broad definition of "pesticide," which includes any "substance or mixture of substances intended to * * * destroy * * * a pest * * *." Minn.Stat. § 18B.01, subd. 18 (1994). This statutory language unambiguously imposes a licensure requirement on all persons receiving compensation for the application of any pesticide. As such, the plain language of the statute requires that Loyd be licensed to apply pesticides, whether restricted- or nonrestricted-use.

Loyd argues Minn.Stat. ch. 18B applies only to agricultural uses of pesticide. However, although chapter 18B places responsibility for the enforcement of pesticide laws on the department of agriculture, we find nothing in the chapter to exclude urban lawn care services from its scope. *See* Minn.Stat.

§ 18B.03, subd. 1 (designating MDA as lead state agency for regulation of pesticides); *see, e.g.,* Minn.Stat. § 18B.07, subd. 2(a) (1994) (governing pesticide storage and handling by any person). Moreover, the inclusion of special rules for pesticide use in cities clearly demonstrates the legislature's intent that urban lawn care services fall within the coverage of the chapter. *See* Minn.Stat. § 18B.09, subd. 3 (1994) (requiring posting of warning signs near sidewalk or street for lawns treated with pesticide).

Loyd also argues the placement of the licensing statute's text, closely following legislation pertaining to restricted-use pesticides, evinces the legislative intent to require licensure only of those who apply the more dangerous restricted-use pesticides. However, being cognizant of the distinction between nonrestricted- and restricted-use pesticides, the drafters of the licensing statute could, had they chosen, have expressly qualified the statute to cover only restricted-use pesticides. *See, e.g.,* Minn.Stat. § 18B.01, subds. 18, 24 (1994) (defining "pesticide" and "restricted-use pesticide" separately); Minn. Stat. § 18B.31 (Supp.1995) (requiring dealer license only for sale of restricted-use pesticides). Reading such a limitation into the statute would render Minn.Stat. § 18B.33, subd. 1(a), superfluous, as licensure for the handling of restricted-use pesticides is mandated elsewhere in the chapter. *See* Minn. Stat. § 18B.30 (1994) (imposing license requirement for use or supervision of use of restricted-use pesticides); *see also* Minn. Stat. § 645.17(2) (1994) (requiring statutes be construed such that all provisions are effective); *Kirkwold Constr. v. M.G.A. Constr.,* 513 N.W.2d 241, 244 (Minn.1994) (same).

In addition, the language of the licensing statute is plain. We cannot defy the legislature's unambiguous statement that the commercial use of any pesticide must be licensed. We conclude the commissioner correctly construed Minn.Stat. § 18B.33 as applying to Loyd's lawn care business, and, accordingly, affirm the commissioner's reinstatement of the cease and desist order.

## II.

■ Under Minn.Stat. § 18C.415, subd. 1(a) (1994),

[a] person may not sell or distribute bulk fertilizers for use on agricultural lands, custom apply fertilizers, or manufacture, blend, or otherwise manipulate fertilizers without obtaining a license from the commissioner * * *.

The term "custom apply" means to "apply a fertilizer, soil amendment, or plant amendment product for compensation." Minn.Stat. § 18C.005, subd. 7 (1994). The statute defines "fertilizer" as "a substance containing one or more recognized plant nutrients * * * designed for use * * * in promoting plant growth." Minn.Stat. § 18C.005, subd. 11 (1994). Loyd concedes he applies fertilizer to customers' lawns, and receives payment for doing so. Thus, the statute, by its terms, requires Loyd to maintain a license.

Loyd suggests this court interpret the phrase "custom apply" to mean "custom mix and apply" fertilizer materials specifically for a customer's order. While we acknowledge that Loyd's proposed definition may be the most natural reading of the term, "custom apply" is defined in Minn.Stat. § 18C.005, subd. 7. Where the legislature has defined a term, we may not look at the term's common or trade usage to determine its meaning within the statute. *See* Minn.Stat. § 645.08(1) (requiring that words defined in chapter be construed according to such definition); *St. George v. St. George,* 304 N.W.2d 640, 643 (Minn.1981) (recognizing statute must be construed in accordance with statutory definition of included term).

■ Loyd also argues the phrase "for compensation" describes not-for-profit activity, and, therefore, his for-profit lawn care business is excluded from the statute's coverage. However, the ordinary meaning of "compensation" is simply "that which is given or received as an equivalent for services * * *." *Webster's New Universal Unabridged Dictionary* 370 (Jean L. McKechnie, ed., 2d ed. 1983); *see* Minn.Stat. § 645.08(1) (providing for statutory interpretation according to common and approved usage of words); *Bennett Comm'n Co. v. Northern Pac. Ry.,* 195 Minn. 7, 12, 261 N.W. 593, 595 (1935) (same). Because Loyd receives mon-

ey payments as an equivalent for his lawn care services, he operates his business "for compensation."

Loyd further argues chapter 18C was not intended to govern end-users of prepackaged fertilizers, but only to regulate handlers of bulk fertilizers. *See* Minn.Stat. § 17.715 (1986) (requiring licensure, under previous law, only of persons manufacturing and mixing fertilizer, and those storing and distributing bulk fertilizers). However, neither the statutory definition of fertilizer nor the current licensing section limits its scope to a certain quantity of fertilizer or to fertilizer purchased in a particular manner, and we decline to read such a term into the statute. *See* Minn.Stat. § 18C.005, subd. 11 (defining "fertilizer" broadly); Minn.Stat. § 18C.415, subd. 1(a) (imposing license requirement for application of any fertilizer, without limitation). Furthermore, the statute expressly distinguishes between provisions applying to all fertilizer users and those limited to users of bulk fertilizers. *See, e.g.,* Minn.Stat. § 18C.415, subd. 1(a) (imposing license requirement on custom applicators and manufacturers of fertilizers, and on distributors of bulk fertilizers).

The language of the fertilizer licensure statute is unambiguous, and, thus, affords us no opportunity to look beyond its plain meaning. Given the undisputed facts of this case, Loyd is subject to the license requirement of Minn.Stat. § 18C.415, subd. 1(a), and cannot lawfully apply fertilizer for compensation unless and until he obtains an appropriate license. Under these circumstances, the commissioner properly reinstated the cease and desist order against Loyd.

### DECISION

The plain language of Minn.Stat. § 18B.33 imposes on Loyd's lawn care business a license requirement for the use of restricted- or nonrestricted-use pesticides. In addition, Loyd must obtain a license to apply fertilizers of any kind under Minn.Stat. § 18C.415.

**Affirmed.**