**In the Matter of A.K.**

**No. C5–00–2217.**

Court of Appeals of Minnesota.

Sept. 11, 2001.

Amy Klobuchar, Hennepin County Attorney, Nancy K. Jones, Assistant Hennepin County Attorney, Minneapolis, MN, (for appellant Hennepin County Children, Family and Adult Services Department).

Charles T. Parks, C. David Flower, Faegre & Benson LLP, Minneapolis, MN, (for respondent guardian ad litem).

Considered and decided by RANDALL, Presiding Judge, WILLIS, and HANSON, Judges.

## OPINION

R.A. RANDALL, Judge.

On appeal from the district court's order placing a child into foster care on a long-term basis after parental rights were terminated, the social-services agency argues that the district court lacked statutory authority to order long-term placement because, under Minn.Stat. § 260C.201, subd. 11(e) (2000), the court is not allowed to place a child under 12 years old into long-term care unless he or she is being placed with an older sibling. Because we conclude that the district court's decision was governed by Minn.Stat. § 260C.325, subd. 4(d) (2000), rather than Minn.Stat. § 260C.201, subd. 11(e), we affirm.

## FACTS

A.K. was born prematurely in 1991, and, as a result of complications from a breech birth, A.K. has severe developmental difficulties. A.K.'s father is unknown, and A.K. has never been in his mother's care. His mother voluntarily placed him in foster care, and in 1997 he was placed in Deborah Harwood's home, where he currently resides. In September 1997, A.K.'s mother entered into an adoption agreement with Children's Home Society, and she specifically requested that Harwood adopt A.K. Harwood intended to adopt A.K. but was unable to do so for financial reasons.[1] From all accounts, and the record is clear, Harwood has continued to provide A.K. with a loving, nurturing, and stable home and has diligently taken care of his extensive medical needs.

In September 1999, appellant Hennepin County Children, Family and Adult Services Department (CFASD) petitioned the district court for a statutorily mandated placement-review hearing. After Children's Home Society moved the court to rescind the adoption agreement between itself and A.K.'s mother because Harwood could not afford to adopt A.K., CFASD moved to amend its petition to allege that A.K. was a child in need of protection or services. The district court agreed and transferred legal custody to CFASD. Later CFASD petitioned to terminate A.K.'s mother's parental rights. The district court granted CFASD's petition, transferred legal custody to the Commissioner of Human Services, and scheduled a hearing to review CFASD's progress toward adoptive placement for A.K. At that time, the court indicated that it was prepared to place A.K. in foster care with Harwood on a long-term basis. CFASD objected to the suggested placement so the court requested that the parties submit written arguments on the issue. Following another hearing on the matter, the court ordered A.K. to be placed in foster care on a long-term basis with Harwood, ordered CFASD to cease looking for adoptive placements for A.K., and ordered CFASD to take his name off of the state adoption register. CFASD appeals from this order.

1. Hennepin County concedes that there is an imbalance between the authorized amount of money that counties can give to adoptive parents as opposed to foster parents. The present legislation favors the foster parents. When asked at oral argument if Hennepin County had thought of making a special arrangement with Harwood so it would be financially feasible for Harwood to adopt A.K., the county responded that this change would have to come from the legislature.

## ISSUE

Does Minn.Stat. § 260C.201, subd. 11(e) (2000), prevent the district court from placing a child under 12 years old into foster care on a long-term basis when parental rights have been terminated under Minn.Stat. § 260C.301 (2000)?

## ANALYSIS

 Statutory interpretation is a question of law subject to de novo review. *In re Welfare of J.M.*, 574 N.W.2d 717, 721 (Minn.1998). The purpose of statutory interpretation is to ascertain and effectuate the legislature's intent. Minn.Stat. § 645.16 (2000). A reviewing court presumes "that plain and unambiguous statutory language manifests legislative intent." *J.M.*, 574 N.W.2d at 721 (citation omitted). If the language is plain and unambiguous, the reviewing court must give it its plain meaning. *Id.* "A statute is ambiguous when it can be given more than one reasonable interpretation." *Tuma v. Comm'r of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn. 1986) (citation omitted).

CFASD argues that the district court lacked statutory authority to order A.K.'s placement into long-term foster care because the permanency statute, Minn.Stat. § 260C.201 (2000), prohibits such a placement unless the child is at least 12 years old. By making this argument, CFASD assumes that the district court was acting under the permanency statute rather than another section of the Juvenile Court Act (chapter 260C). A.K.'s guardian ad litem argues that the court was acting under the act's termination-of-parental-rights provisions, which gave the court authority to order A.K. to be placed in Harwood's foster care on a long-term basis. A.K.'s guardian ad litem completely approved of Harwood as a long-term foster care provider noting the loving care Harwood gave A.K.

September 1999 was the first time CFASD alleged that A.K. was a child in need of protection or services, thus, the proper starting place for the district court was Minn.Stat. § 260C.201, subd. 1 (2000). Subdivision 1 provides the district court with an exclusive list of possible dispositions that the court must order if it finds that a child is in need of protection or services. Minn.Stat. § 260C.201, subd. 1(a). Included in the list is the disposition of transferring legal custody to the local social-services agency. Minn.Stat. § 260C.201, subd. 1(a)(2). In this case, this is the specific disposition that CFASD requested and the district court ordered.

After the district court orders its initial disposition, the statute requires the court to conduct a hearing to determine the permanent status of a child who has been placed out of his parent's home. Minn. Stat. § 260C.201, subd. 11 (2000). When the court conducts a hearing to determine the child's permanency status, this portion of the statute provides another list of exclusive dispositions that the court must order if the child is not returned home. Minn.Stat. § 260C.201, subd. 11(e). CFASD argues that this is the portion of the act under which the district court had to decide A.K.'s status. But the statute also provides:

> If a termination of parental rights petition is filed *before* the date required for the permanency planning determination and there is a trial under section 260C.163 scheduled on that petition within 90 days of the filing of the petition, *no hearing need be conducted under this subdivision.*

Minn.Stat. § 260C.201, subd. 11(b) (2000) (emphasis added).

 In this case, the permanency hearing was scheduled for April 10, 2000, but CFASD's petition to terminate A.K.'s

mother's rights was filed on April 7, 2000, and was heard on May 9, 2000. Because CFASD petitioned the court to terminate A.K.'s mother's rights *before* the permanency hearing and trial was set within 90 days of the filing of the petition, the district court no longer *had to* proceed under Minn.Stat. § 260C.201. Contrary to CFASD's argument, the court was not bound by the exclusive list of dispositions provided by Minn.Stat. § 260C.201, subd. 11(e) and could proceed, as it did, under the termination provisions of the Juvenile Court Act.

If the district court terminates all parental rights, the court must transfer legal custody to the Commissioner of Human Services, a licensed child-placing agency, or "an individual who is willing and capable of assuming the appropriate duties and responsibilities to the child." Minn.Stat. § 260C.325 (2000). Here, when CFASD petitioned to terminate A.K.'s mother's rights, it also requested that the court transfer legal custody to the commissioner. This is exactly what the court did. In addition, after termination, the court scheduled a hearing to review CFASD's progress toward an adoptive placement of A.K. In the meantime, A.K. became a state ward in foster care, so the court was statutorily required to

> conduct a dispositional hearing within 18 months of the child's initial foster care placement and once every 12 months thereafter to determine the future status of the ward including, *but not limited to,* whether the child should be continued in foster care for a specified period, should be placed for adoption, or should, because of the child's special needs or circumstances, *be continued in foster care on a long-term basis.*

Minn.Stat. § 260C.325, subd. 4(d) (2000) (emphasis added).[2]

Based on Minn.Stat. § 260C.325, subd. 4(d), the court had authority to order continued foster care for A.K. on a long-term basis. Given the unambiguous statutory provisions, we conclude that Minn.Stat. § 260C.201, subd. 11(e), only applies to pretermination-of-parental-rights cases. Here, A.K.'s mother's rights were already terminated, thus CFASD's argument that the district court was required to order a disposition under Minn.Stat. § 260C.201, subd. 11(e), lacks merit.

CFASD also argues that Minn.Stat. § 260C.201 is a specific provision that limits the application of Minn.Stat.

---

**2.** The legislature recently amended this provision, deleting the cited language and reinserting it, with minor changes, into Minn.Stat. § 260C.317, subd. 3(c) (2000). 2001 Minn. Laws ch. 178, art. 1, § 38. Although subdivision 3(c) deals with the court's retention of jurisdiction after parental rights are terminated when adoption is not the intended disposition, the language still indicates that the court can order long-term, out-of-home placement under the act's permanency provisions *or* the termination provisions. This seems especially true since the subdivision now reads:

> The court shall retain jurisdiction in a case where long-term foster care is the permanent disposition *whether under paragraph (c) or section 260C.201, subdivision 11*.

*Id.* (emphasis added). If the same facts of this case were to be presented in district court after the statutory amendments take effect, the court would still retain jurisdiction and be required to hold a hearing every 90 days following termination because, at the time of termination, adoption was the intended permanent-placement disposition. Minn.Stat. § 260C.317, subd. 3(b) (2000). The purpose of such a hearing is to

> review progress toward an adoptive placement and the specific recruitment efforts the agency has taken to find an adoptive family or *other placement living arrangement* for the child and to finalize the adoption or *other permanency plan.*

*Id.* (emphasis added). Thus, the district court would still be allowed to order foster care on a long-term basis as part of a "placement living arrangement" or "permanency plan."

§ 260C.325. CFASD asserts that reading the act in any other manner would lead to an absurd result, citing legislative testimony to support its assertion that long-term foster care can never be ordered under any of the act's provisions unless the child is at least 12 years old or has a sibling who is at least 12 years old in foster care. Appellate courts may refer to a statute's legislative history to determine how the language should be read *if* the language is ambiguous. Minn.Stat. § 645.16 (2000) (emphasis added). Here, the relevant portions of the Juvenile Court Act are not ambiguous. Thus, we need not refer to legislative history to decide the issue. When a statute's words

> in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

Minn.Stat. § 645.16; *see Borich v. Borich,* 450 N.W.2d 645, 647 (Minn.App.1990) (stating if statutory language is unambiguous, reviewing court cannot supply that which legislature has declined to provide). Nowhere in the act does the legislature indicate that the limitation found in Minn. Stat. § 260C.201, subd. 11(e), which deals with petitions to determine if a child is in need of protection or services, applies to petitions to terminate parental rights. Additionally, the provision dealing with termination does not state that the court can only order long-term care subject to the limitations of 260C.201, subd. 11(e). Based on the statutory provisions' unambiguous language, we conclude that Minn.Stat. § 260C.201 is not a specific provision that limits the application of Minn.Stat. § 260C.325.[3]

CFASD contends that it did not have enough time to research suitable adoptive placements for A.K. because the court's order that placed A.K. in long-term care was issued only five months after the court terminated parental rights. CFASD, both in its brief and at oral argument, spent a considerable amount of time speculating about what would happen to A.K. if Harwood changed her mind about caring for A.K. or lost her foster-care license. CFASD attempted to argue that adoption was in A.K.'s best interests because of the assumption that adoption would provide A.K. with a more nurturing and stable environment with a greater chance of long-term bonding with adoptive parents.

CFASD has not demonstrated any facts to support its assertion. The act's termination provisions state that the child's best interests are paramount. Minn.Stat. § 260C.301, subd. 7 (2000). Here, the record indicates that Harwood has provided a safe and nurturing home for A.K. since she began caring for him in 1997 and that the two have formed an extremely strong bond. Harwood has been diligent in attending to A.K.'s extensive medical needs. All parties agree that Harwood has provided A.K. with a life that he had never experienced before: a safe and stable home with a loving parent. Public policy and A.K.'s best interests are served by the district court's decision to place A.K. into foster care on a long-term basis with Harwood. Should it happen in the future that

---

**3.** CFASD also relies on *In re the Welfare of J.M.,* 574 N.W.2d 717 (Minn.1998), to argue that Minn.Stat. § 260C.201 is a specific provision that limits the application of Minn.Stat. § 260C.325. But *J.M.* is distinguishable from the instant case. Unlike this case, the mother in *J.M.* was appealing from the district court's order that terminated her parental rights so the case was still under the purview of Minn. Stat. § 260C.201. Here, because CFASD is not appealing from the court's termination order, the supreme court's rationale in *J.M.* is not applicable.

Harwood wishes to discontinue being a foster parent, the court can deal with that issue at that time. There is no need to speculate about that now. Also, the district court retains jurisdiction in this matter if Harwood is unable to continue to care for A.K. The court can make new arrangements at that time, if needed.

## DECISION

Because parental rights were previously terminated, the district court had statutory authority to place A.K. into foster care on a long-term basis under Minn.Stat. § 260C.325. The district court acted properly in making its decision. The record convincingly demonstrates that A.K.'s best interests were met by placing him in Harwood's care on a long-term basis. The statute allows the court to order that placement.

**Affirmed.**